IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| SWISHER MEMORIAL HOSPITAL | § | |
| | § | CIVIL ACTION CAUSE NUMBER |
| V. | § | |
| | § | |
| | § | 2:03-CV-261-J |
| ELIZABETH WALKER, KAREN LUKE, | § | |
| A PLUS INSURANCE CONCEPTS, | § | |
| PRIVILEGE CARE, INC., PRIVILEGE | § | |
| CARE MARKETING GROUP, INC., | § | |
| PRIVILEGE CARE HEALTH & | § | |
| WELFARE FUND, aka Privilege Care | § | |
| Employee Health & Welfare Fund; | § | |
| PROFESSIONAL AND INDUSTRIAL | § | |
| TRADE WORKERS UNION, aka | § | |
| Professional Industrial Trade | § | |
| Workers Union, P.I.T.W.U. | § | |
| HEALTH & WELFARE FUND, aka | § | |
| Privilege Care P.I.T.W.U., | § | |
| Health and Welfare Funds, | § | |
| EMPLOYERS MUTUAL, L.L.C. | § | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

TO THE HONORABLE JUDGE OF SAID COURT:

    NOW COMES Plaintiff, and files this Memorandum in Support of its Motion to Remand under 28 U.S.C. § 1447(c).

### A. Introduction

1.    Plaintiff is Swisher Memorial Hospital; Defendants are Elizabeth Walker, Karen Luke, A Plus Insurance Concepts, Privilege Care, Inc., (hereinafter referred to as "PCI"), present movant Privilege Care Marketing Group, Inc., Privilege Care Health & Welfare Fund a/k/a

Privilege Care Employee Health & Welfare Fund, Professional and Industrial Trader Workers Union a/k/a Professional Industrial and Trade Workers Union, P.I.T.W.U. Health and Welfare Fund a/k/a Privilege Care P.I.T.W.U. Health and Welfare Fund, and Employers Mutual, L.L.C.

2. On July 1, 2003, Plaintiff sued Defendants for negligence, Deceptive Trade Practices Act, Texas Insurance Code, Breach of Contract and Fraud.

3. On August 14, 2003, Defendants PCMG, Inc. (hereinafter "Defendant") improperly filed its Notice of Removal with this Court, attached hereto as Exhibit "A." Removal was improper because the lawsuit does not involve a federal question. As is explained below, this Court lacks subject matter jurisdiction and therefor must remand this case back to the state court for further proceedings. *International Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89, 111 S.Ct. 1700, 1710 (1991). Further, Defendants' allegations that this case arises under 28 U.S.C. § 1331, 1441(b) and 29 U.S.C. 1132(a)1 and 1144(a) are incorrect in that said statutes under the circumstances of this case do not authorize removal of this suit.

### B. Summary

Plaintiff has failed to show that Plaintiff's claims are federal in nature, and is unable to demonstrate to this Court that the fraudulent health care plan it has marketed qualifies as an ERISA-governed plan pursuant to 29 U.S.C. § 1001, *et seq.* Defendant has further failed to establish any evidence in favor of its contentions and therefore it removal rests solely on its naked assurances to the court. Being that there is no evidence to sustain a removal Defendants claims fail and this case should be remanded back to state Court.

## C. Facts and Equities

4. This case revolves around a massive and complicated scheme concerning the illegal sale of insurance. The scheme has involved multiple entities. The entities in question have morphed into new entities, including Defendant Privilege Care Marketing Group (hereinafter "PCMG"), as state investigators attempted to stop massive illegal sale of insurance in multiple states. As a result of the activities of Defendant and its principals and others, numerous individuals around the United States have been left with millions of dollars worth of unpaid insurance claims.

5. PCMG is the subject of a Texas Department of Insurance Investigation regarding the unauthorized sale of insurance in the State of Texas. ((See Exhibit B). Acting on the TDI Application, the Commissioner of Insurance found that PCMG engaged in the unauthorized practice of insurance in the state of Texas (See Exhibit C).

6. The Defendant's principals and/or key employees are James M. Doyle ("Doyle"), Susan Messner ("Messner"), Christopher Ashiotes ("Ashiotes"), Michael DiVece ("DiVece"), Scott Rutherford ("Rutherford"), and Donald R. Smith (collectively the "principals of Defendant") (See Exhibit B, p.9, para.14).

7. Originally, the principals of Defendant did business as American Business Society, Inc. ("ABS"). ABS was the marketing arm for another multi-state insurance scheme for an entity called Employers Mutual, L.L.C ("Employers Mutual"). ABS utilized a network of agents to sell insurance to various entities. (See Exhibit B, p.9, para.14). Defendants Elizabeth Walker ("Walker") and Karen Luke ("Luke") were two of those agents in the State of Texas. (See Exhibit D, Woodard Affidavit). Walker and Luke arranged for Plaintiff to purchase insurance from Employers Mutual. ABS also acted as the marketing arm for the Ajax

Health Benefit Plan in Texas ("Ajax"). (See Exhibit B, p.10, para. 20 & 21). Both Employers Mutual, ABS, and Ajax were ordered to cease and desist illegally selling insurance in the State of Texas. (See attached Exhibits E and F). The Texas Department of Insurance has fined ABS a total of $2.5 million dollars in relationship to its activities in illegally selling insurance in Texas. Others were fined an additional $10 million dollars for the same scheme to sell illegal insurance in the State of Texas in the same commissioners order. (See Exhibit G).

8. After Employers Mutual and Ajax were shut down by the Texas Department of Insurance, the principals of Defendant incorporated Defendant, PCMG. (See Exhibit B, p.10, para. 22). The State of Texas alleges that PCMG was started to circumvent the cease and desist orders against Employers Mutual and Ajax. *Id.*

9. Defendant, PCMG acted as the marketing arm for Privilege Care, Inc., another entity engaged in the illegal sale of insurance in the State of Texas. (See Exhibit B, p.10, para. 23). Fortunately for the citizens of Texas, the Texas Department of Insurance investigated the activities of Defendant and stopped them from continuing the illegal sale of insurance in Texas. (See Exhibit C). Unfortunately, the Cease & Desist Order did not come in time to prevent Defendant from selling the Privilege Care, Inc., health insurance to Swisher Memorial Hospital's employees. (See Exhibit D).

10. Plaintiff Swisher Memorial Hospital (hereinafter "Swisher" or "Plaintiff") is a community hospital district that serves the people of Tulia, Texas and the surrounding area. Swisher provides health care coverage for its 85 employees and their qualifying dependents. Approximately 110 lives are insured in Swisher's health care plan. (See Exhibit D).

11. In August 2001, Defendants Walker & Luke approached Swisher to assist it in finding health insurance for its employees. It was Swisher's belief that both Walker and Luke were licensed insurance agents in the State of Texas. Swisher relied upon these recommendations and as a result arranged a health care plan for its employees with Employers Mutual. After placement of Swisher's employees in the Employers Mutual, it was determined by the Texas Department of Insurance that Employers Mutual was not licensed in the State of Texas to provide insurance. As previously explained, the Texas Insurance commissioner issued a commissioner's order for Employers Mutual to cease doing business in the State of Texas, attached hereto as Exhibit "B," (*See Exhibits 20 & 21 to TDI Application*). As a result, employees with Swisher Memorial Hospital were left without insurance coverage. Employers Mutual, L.L.C. failed to meet its obligations and failed to pay for the health care claims of Swisher's employees.

12. In December 2001, after the Employers Mutual, L.L.C. healthcare plan was ordered to cease by the commissioner of the Texas Department of Insurance, (hereinafter referred to as "TDI"), Walker and Luke again approached Swisher and recommended Swisher purchase a replacement healthcare plan with Privilege Care, Inc. The Privilege Care, Inc., healthcare plan was marketed through Walker and Luke. Walker and Luke were acting on behalf of PCMG who in turn agreed to pay them excessive commissions on placing clients with their health insurance product. Swisher relied upon the advice of Walker and Luke and decided to use Privilege Care, Inc., as its health care provider.

13. In January 2002, Plaintiff Swisher, through Defendants Elizabeth Walker and Karen Luke, purchased a healthcare plan for its employees from Privilege Care, Inc. This health care plan was proposed by Defendants Walker, Luke and Privilege Care, Inc. as a health care plan

only. At no time were staff leasing services offered to Swisher, nor was enrollment in the Professional Industrial and Trade Workers Union or P.I.T.W.U. Health and Welfare Fund (collectively "P.I.T.W.U.") discussed with Swisher. (See Exhibit D).

14. The few claims that employees of Swisher did receive reimbursement came from P.I.T.W.U., even though Swisher contracted with Privilege Care for Swisher's health care plan. (See Ex. D).

15. During the conversion process from Swisher's prior Employers Mutual health care plan to the Privilege Care Inc., Swisher did not enter into any collective bargaining agreement. In June 2002, a representative of P.I.T.W.U. came to Swisher in Tulia, Texas and requested that Swisher sign a collective bargaining agreement. Swisher refused to sign the collective bargaining agreement. (See Exhibit D).

16. As of October 2002 it became obvious to Swisher that Privilege Care, Inc., was not paying healthcare claims presented to it under its healthcare plan. Swisher terminated its Privilege Care, Inc. health care plan on October 31, 2002. Due to Privilege Care, Inc., not properly paying claims, Swisher's employees were referred by health providers to credit and collection bureaus. Swisher has paid many thousands of dollars in premiums for insurance that was not authorized in the State of Texas and has failed to cover its employees health care claims. Swisher has also stepped in and paid unpaid medical claims that Privilege Care, Inc. has failed to pay on behalf of Swisher employees related to their use of the insurance coverage arranged by Privilege Care, Inc. (See Exhibit D).

17. One of the principals of Privilege Care Inc., has been found guilty of criminal wrongdoing. In August of 2002, David Weinstein was convicted of two felony counts in Broward County, Florida relating to operation of an unauthorized Multiple Employer Welfare Arrangement

(hereinafter "MEWA") and engaging in the unauthorized business of insurance. (See Exhibit B, p. 16, para. 66).

18. Also in August 2002, Privilege Care, Inc., agreed to pay $5,000.00 in administrative penalties to the Texas Department of Labor Relations in connection with a finding that it had offered staff leasing services while it did not hold a license to do so. (See Exhibit B, p. 8, para 11).

19. PCMG and its related entities failed in their attempt to circumvent lawful regulation by the Texas Department of Insurance. As previously explained above, by TDI Emergency Cease and Desist Order 02-1295 Privilege Care Marketing Group and its principals were found to have no authorization to engage in the business of insurance in Texas, and to have failed to present any evidence that any of the health insurance or plans they offered qualified for any exemption from state regulation. (See Exhibit C at p. 6). Further, their conduct was found to be fraudulent and hazardous, and causing actual or imminent public injury by their conduct designed to evade the insurance laws of Texas. *Id.* Accordingly, the Commissioner ordered the entities offering the PCI plan, including PCMG, to immediately cease and desist from participating in any way in the business of insurance. *Id.*, at 7. As of this date, the related entities offering the PCI plan are also subject to similar cease and desist orders in Oklahoma and Louisiana. (See Exhibit B, p. 19, para. 78 & 79; see also Exhibits 53 and 54 to Exhibit B).

20. Presently, Defendant PCMG seeks to further frustrate and delay the legitimate claims of Swisher by purporting to shield its conduct behind the framework of ERISA jurisdiction, which is clearly not applicable in this case, through the baseless Notice of Removal filed in this Court.

## D. Argument

### I. Res Judicata /Collateral Estoppel Bar Removal

21. The issue of whether or not the plan provided by P.I.T.W.U. was an preempted ERISA plan has already been litigated in the administrative hearing process before the Texas Department of Insurance. Defendant made an appearance before the Texas Department of Insurance in the administrative process and then withdrew its right to a hearing prior to the Commissioner of Insurance issuing a Cease and Desist order finding PCMG engaged in the unauthorized practice of insurance. (See Exhibit C).

22. The Application seeking a cease and desist order against PCMG clearly showed that the health care plan marketed by Defendant PCMG was not a plan governed by ERISA. Though TDI requested information from Defendants' to establish ERISA preemption, no evidence was ever provided. (See Exhibit B, p. 13, para 47). Further in response to TDI inquiries regarding the registration number with the U.S. Office of Labor Management services and required filings with the U.S. Department of Labor Privileged Care, Inc. failed to provide the requested information. (See Exhibit B, p. 13, para. 50). Further, TDI in the underlying administrative hearing, requested that Privilege Care, Inc., and P.I.T.W.U. provide the advisory opinion received by the U.S. Department of Labor and, both admitted that they had never requested such an advisory opinion. (See Exhibit B, p 14, para. 51 & 55). Finally, P.I.T.W.U. provided no evidence that the agreement between PCI and P.I.T.W.U. was an agreement that the Secretary of U.S. Department of Labor had found under 29 U.S.C., § 1002 (40) to be a collective bargaining agreement. Absent such a finding by the Secretary of U.S. Department of Labor, the health coverage does not qualify as a union benefit plan, exempt from state regulation. (See Exhibit B, p. 15, para. 63). Further, these failures to provide

evidence in the administrative hearing were admissions by silence that said documents do not exist and that the plan did not meet the requisites for a valid ERISA plan.

23. Defendant PCMG has attached to its Notice of Removal excerpt from its plan that states it is an ERISA plan. (See Exhibit F to Defendant's Notice of Removal). Plaintiff objects to this attachment as improper and uncredible evidence that the plan in question is a valid ERISA plan. This plan excerpt was merely a self-serving statement utilized by Privileged Care and others to veil with legitimacy their illegal insurance scheme. Plaintiff specifically requests that the court hold Defendant to its burden to present legitimate evidence that the plan in questions meets the statutory prerequisites for ERISA preemption. The Defendant cannot satisfy this burden.

24. Defendant PCMG is improperly collaterally attacking the findings of the Commissioner of the Texas Department of Insurance in now claiming the plan it was improperly selling in Texas was not insurance but rather a federally preempted ERISA plan. An agency's final order, like the final judgment of a court of law, is immune from collateral attack. *Friends of Canyon Lake, Inc., v. Guadalupe-Blanco River Authority*, 96 S.W.3d 519 ( Tex. App.- Austin, 2002, no pet. h.). The Commissioner's Order clearly finds that Defendants activities were the unauthorized business of insurance (See Exhibit C). The doctrine of collateral estoppel applies even where the prior judgment is made by an administrative agency acting in a judicial capacity. *Ex Parte Peralta*, 87 S.W.3d 642 (Tex.App.- San Antonio 2002, no pet.).

25. The Texas Department of Insurance's administrative finding that the PCI plan is not an ERISA-governed plan, but simply an unauthorized plan sponsored by an unauthorized MEWA also operates as *res judicata* to Defendant PCMG's attempt to relitigate this decision

before this Court, because in making this finding, the Texas Department of Insurance 1) acted in a judicial capacity; 2) granted the parties adequate opportunity to litigate the disputed issues of fact before it; and 3) then rendered a determination that was valid, final, and on the merits. *See Intl. Union of Operating Engineers v. Sullivan Transfer Inc.*, 650 F.2d 669, 673 (5th Cir., 1981) *citing United States v. Utah Const. & Mining Co.*, 384 U.S. 392 (1966); *Durfee v. Duke,* 375 U.S. 106 (1963). *See also, Hitt v. Connell*, 301 F.3d 240 (5th Cir., 2002)(finding doctrine of res judicata applies to determinations of administrative bodies). As Defendant PCMG withdrew its original request for a hearing on this order, and ultimately failed to participate in the hearing which produced it. PCMG is therefore now collaterally estopped from attempting to relitigate their contention that the PCI plan is ERISA-governed before this Court. *See Intl. Union,* at 677.

26. Therefore, since a judicial determination has already found that the plan in question is not governed by ERISA but rather is insurance, Defendant's removal of this case to federal court on this basis was improper. Being that there is no federal question pending before this Court, it must remand this case back to state court, as this Court lacks subject matter jurisdiction. *International Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89, 111 S.Ct. 1700, 1710 (1991).

## II. The Plan is Not Preempted by ERISA

27. The prior decision of the Texas Department of Insurance that the plan is not governed by ERISA is correct. The PCI plan is not an "employee benefit plan" within the ERISA statutory definition. Defendant PCMG has represented to the court that the PCI plan is ERISA-governed and that participants are entitled to protection under the ERISA statute 29 U.S.C. § 1001 *et seq.* (See Exhibit A). The health insurance product marketed by PCMG

fails to satisfy the statutory definition for an ERISA-governed employee benefit plan. An "employee welfare benefit plan" subject to ERISA is one that is established or maintained by "an employer or by an employee organization." 29 U.S.C. § 1002(1). However, as found by the Texas Department of Insurance, "for the purposes of establishing or maintaining an employee welfare benefit plan, multiple unrelated employers electing to have PCI assume the role of 'co-employer' to their employees, does not create a plan sponsor that is a single 'employer' as defined in ERISA, 29 U.S.C. § 1002(5)." Accordingly, PCI and its related entities have not been operating an ERISA-governed plan, but rather merely an unauthorized MEWA within P.I.T.W.U. and/or the P.I.T.W.U. fund. *Id.*

28. In recognition of this fact, TDI Cease and Desist Order 02-1295 found, and correctly so, that PCI, PCMG, and its related entities were simply unauthorized persons engaging in the unauthorized business of insurance, subject to regulation by Texas insurance laws without entitlement to any exemption. See Exhibit C, at pages 5-8.

29. Similarly, there is no evidence that the agreement between PCI and P.I.T.W.U. was an agreement that the Secretary of the U.S. Department of Labor had found under 29 U.S.C. § 1002(40) to be a collective bargaining agreement. (See Exhibit B, at paragraph 63.) Accordingly, this health coverage did not qualify as a union benefit plan exempt from state regulation. *Id.*

30. Plainly, the PCI plan is also not established or maintained by an "employee organization" within the meaning of the ERISA definition at 29 U.S.C. § 1002(4). The PCI plan is rather simply an unauthorized MEWA designed to circumvent prior standing orders of the Texas Department of Insurance and perpetrate a fraud on the citizens of this state. (See Exhibit B, at paragraph 63).

### III. Alternatively, Defensive Preemption

31. Alternatively, to the extent the Court determines that ERISA applies to the plan, this fact alone does not permit the removal of this case from state court. Defendant's contention that "defensive" ERISA preemption under 29 U.S.C. § 1144(a) applies is irrelevant before this Court. No basis for any type of federal preemption exists in this litigation because no "employee benefit plan" within the definition of the ERISA statute is at issue "in relation to" Plaintiff's claims. Moreover, Defendants' contention that 29 U.S.C. § 1144(a) preempts Plaintiff's state law claims is wholly irrelevant before this Court, as such "defensive preemption" is merely an affirmative defense which Defendant might assert in state court, and not an independent basis for federal subject matter jurisdiction. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987) ("ERISA preemption, without more, does not convert a state claim into an action arising under federal law"). "When the doctrine of complete preemption does not apply, but the Plaintiff's state claim is arguably preempted under [29 U.S.C. §1144(a)], the District Court, being without removal jurisdiction, cannot resolve a dispute regarding preemption." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d. 350, 355 (3rd Cir., 1995). "[The District Court] lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." *Id.* Upon proper remand to the District Court of Swisher County, Texas, Defendant PCMG will be free to present its contentions that Plaintiff's claims must be dismissed as impermissibly "related to" an employee benefit plan within the meaning of the ERISA statute, and hence subject to dismissal in that court. Of course, at such time Plaintiff will raise its collateral estoppel and res judicata claims to prevent such a collateral attack from occurring.

### E. Burden of Proof

32. Plaintiff's Motion to Remand in this Court shifts the burden of proof to Defendant PCMG to prove the alleged bases for its Notice of Removal, namely the federal nature of Plaintiff's claims. *See Salveson v. Western States Bankcard Ass'n,* 525 F.Sup. 566 (N.D.Ca. 1981). Plaintiff has failed to show that Plaintiff's claims are federal in nature, and is unable to demonstrate to this Court that the fraudulent health care plan it has marketed qualifies as an ERISA-governed plan pursuant to 29 U.S.C. § 1001, *et seq.* Defendant has further failed to establish any evidence in favor of its contentions and therefore its removal rests solely on its naked assurances to the court. Being that there is no evidence to sustain a removal Defendants claims fail and this case should be remanded back to state Court.

### F. Conclusion

WHEREFORE, Plaintiff asks the court to grant its Motion to Remand pursuant to 28 U.S.C. § 1447(c), remand this suit to the state court where it was originally filed, and award Plaintiff its court costs, expenses, and attorney fees incurred as a result of Defendant PCMG, Inc.'s erroneous removal.

Respectfully submitted,

DAVIS & WILKERSON, P.C.
Attorneys at Law
P.O. Box 2283
Austin, Texas 78768-2283
(512) 482-0614 telephone
(512) 482-0342 facsimile

By: _____
Steven C. Levatino
State Bar No. 12245250

SANDERSBAKER, P.C.
P.O. Box 2667
320 South Polk, Suite 700 (79101)
Amarillo, Texas 79105-2667
(806) 372-3725 Fax
(806) 372-2020 Phone

By: _____
Russ DeVore
State Bar No. 05663050

**ATTORNEYS FOR PLAINTIFF SWISHER MEMORIAL HOSPITAL**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been provided to the following counsel of record in accordance with the TEXAS RULES OF CIVIL PROCEDURE on this 12th day of September, 2003:

Greg K. Winslett/ Steven Ramos
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

_____
Steven C. Levatino

G:\USERS\LEVATINO\DOCS\3368-02 Swisher Memorial Hospital\pl\Memo in Support of Motion to Remand 02.wpd